UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| HARRY ABRAMOWSKI, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> MAGICJACK LP, a Delaware limited partnership; <br> YMAX Corp., a Delaware corporation; and <br> DANIEL BORISLOW, <br><br> Defendants. | Civil Action No. 08-CIV-81133-RYSKAMP/VITUNAC |

## DEFENDANTS' MOTION TO DISMISS AND ACCOMPANYING MEMORANDUM OF LAW

Plaintiff's complaint misstates the very materials it cites and, in the process, disregards basic legal rules. Plaintiff alleges, for example, that he could not obtain a refund from defendants within 30 days of his order, when the electronic record shows he did not ask for one until day 32. Plaintiff claims that he suffered an injury because he could not obtain a refund, but the electronic record reveals he received a refund form upon request, never submitted it, and continues to use the product to this day. In addition to these fundamental flaws, plaintiff asserts tort claims in a case covered by a contract, in violation of the economic loss rule. He invokes a provision of the Federal Communications Act that does not apply to the practices alleged here. He asserts breach of contract claims against defendants who are not parties to any contract with him. And, he advances fraud claims against "all defendants" without identifying who, if anyone, made the representations to him.

On multiple grounds, in multiple respects, plaintiff's claims are frivolous. In this motion, defendants discuss the legal infirmities requiring dismissal under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.[1] In the companion motion, defendants invoke section 501.211(3) of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). Under that provision, when defendants maintain that a plaintiff's FDUTPA claim is "without legal or factual merit, or brought for the purpose of harassment," the Court may consider evidence and order plaintiff to post a bond covering defendants' potential damages, including attorneys' fees.

## BACKGROUND AND ALLEGATIONS OF THE COMPLAINT

This case involves the magicJack®, a device that uses Voice over Internet Protocol technology to allow customers to use a standard telephone over a broadband Internet connection, without a telephone line. A user plugs the magicJack® into the USB port of a computer on one end, and plugs a standard telephone into the other. *See* magicJack LP's website, *available at* www.magicJack.com.[2] Customers can use the magicJack® to make free phone calls to

---

[1] Thus, Count I (FDUTPA) fails under that statute and under Rule 9(b). Count II (breach of contract) fails because the wrong parties are sued. Counts III (negligent misrepresentation) and IV (fraud) are barred by the economic loss rule, and Count IV also fails under Rule 9(b). Count V fails to state a claim under the Federal Communications Act. Count VI (unjust enrichment) cannot stand where there is a valid contract, and Count VII (conversion) is another tort claim barred by the economic loss rule.

[2] The Court may properly consider magicJack LP's website under Rule 12(b)(6) without converting this motion into one for summary judgment. Plaintiff cites the website repeatedly, *see, e.g.*, Compl. ¶¶ 3, 4, 6, 7, 26, 28, and its contents are central to plaintiff's claim. *See Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal."). *See also Horsley v. Feldt*, 304 F.3d 1125, 1134-35 (11th Cir. 2002) (considering documents referenced in a complaint as part of pleadings); *Grupo Televisa, S.A. v. Telmundo Comm. Group, Inc.*, No. 04-20073, 2005 WL 5955701, at *5 (S.D. Fla. Aug. 17, 2005) (taking judicial notice of website contents). Moreover, the contents of the website are capable of accurate and ready determination, and defendants do not use them for the truth of the matters therein. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279-80 (11th Cir. 1999).

anywhere in the U.S. and Canada, and to receive phone calls from anywhere in the world, thus eliminating local and long distance phone charges. *Id.*

magicJack LP sells the magicJack® on its website and by phone, offering customers a "100% Risk Free 30 Day Free Trial." Compl. ¶ 4. magicJack LP's website explains to consumers that, "The 30 day FREE trial begins on the day you place your order." *See* magicJack LP's website, FAQs, *available at* http://www.magicJack.com/1/faq/ (Ex. A).

As plaintiff acknowledges, each customer who orders a magicJack® enters into a contractual relationship with magicJack LP. *See* Compl. ¶ 50 ("By purchasing the MagicJack product ... plaintiff and Class members entered into an express or implied-in-fact agreement, or incurred obligations through an implied-in-law contract with defendants, where they contracted and warranted that at least 30 days pass before defendants would make any charges...."); *id.* ¶¶ 51-52. Although the complaint does not specify all the terms of the contractual relationship, magicJack LP's website does. It posts the "terms of service" contract that magicJack LP enters with all of its customers if they use the product. *See* "Installing Your magicJack," *available at* http://www.magicJack.com/9/faq/ (Ex. B); "Terms of Service and Software License Agreement," *available at* http://www.magicjack.com/tos/ (Ex. C).

The terms of service agreement conveys clearly, repeatedly, and in several different ways that customers are bound by all its terms. Among other things, it states:

- "Before you begin using the magicJack device ... you must read and agree to these Terms of Service and the following terms and conditions and policies, including any future amendments...."

- "BY COMPLETING THE REGISTRATION PROCESS AND CLICKING THE 'I ACCEPT' BUTTON, YOU INDICATE YOUR AGREEMENT TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT. IF YOU DO NOT ACCEPT AND ABIDE BY THIS AGREEMENT, YOU MAY NOT USE THE magicJack DEVICE OR DOWNLOAD OR USE THE SOFTWARE."

- "This is an agreement between magicJack, LP (the licensor of the magicJack device and the Software) and you. Nothing in this Agreement will be deemed to confer any rights or benefits to anyone else."

- "This Agreement is the entire agreement between you and magicJack and governs your use of the magicJack device and Software, it trumps any prior agreements between you and magicJack."

*Id.* The terms of service also address the 30-day "Money Back Guarantee": "If, within 30 days of purchasing the magicJack device directly from our website, you are not satisfied with your magicJack device you may either return it to us for a full refund of the purchase price, minus shipping and handling, or exchange it for a new device." *Id.* In addition, the terms of service contract on magicJack LP's website displays the 30-day "Free Trial" statement. *Id.*

Plaintiff Harry Abramowski ordered a magicJack® on or about July 1, 2008. Compl. ¶ 11. Plaintiff complains that he provided his debit card information to complete the order, was "immediately charged" $46.90, and had to "pay up front" for the free trial. *Id.* ¶ 7, 27. According to plaintiff, he was "deceived by defendants' promises" concerning the 30-day free trial, and "reasonably believed" that he "would not be charged for the magicJack® product until the expiration of the 30-day free trial period." *Id.* ¶ 42. Although plaintiff in fact did not seek a refund until *after* the 30 day period, he claims that he was "unable to void the purchase," was "deterred from obtaining refunds for the unauthorized charges," and was "left without remedy or recourse, due to the defendants' bogus return program, ensuring defendants received their money no matter whether" plaintiff was "dissatisfied with the product."[3] *Id.* ¶ 43.

---

[3]   The electronic record shows that plaintiff ordered the magicJack® on June 28, 2008, and magicJack LP did not seek or receive payment until July 28, 2008, upon expiration of the 30-day trial period. Plaintiff first asked to return his product on July 30, 2008, *after* the expiration of the 30-day period. Nevertheless, magicJack LP sent him a Return Merchandise Authorization form on that day, which he could have used. Instead, plaintiff never returned the device or the RMA.

Footnote continued on next page

On behalf of himself and putative class members, plaintiff asserts claims "Against All Defendants" -- including shareholders and limited partners that never dealt with him.[4] Without specifying which defendant did what, he alleges violations of Florida's Deceptive and Unfair Trade Practices Law, Fla. Stat. § 501.201 *et seq.* (Count I), breach of contract (Count II), negligent misrepresentation (Count III), fraud (Count IV), violations of the Federal Communications Act, 47 U.S.C. § 201(b) (Count V), unjust enrichment (Count VI) and conversion (Count VII). And, although he continues to use his magicJack®, plaintiff alleges that he "suffered injury in fact, a loss of money or property and the use of money or property, and expended time in attempting to secure a refund...." *Id.* ¶ 11.

All in all, plaintiff's claims are indiscriminate, inaccurate, and legally unsound.

## ARGUMENT

### I. THE ECONOMIC LOSS DOCTRINE BARS PLAINTIFF'S CLAIMS FOR NEGLIGENT MISREPRESENTATION, FRAUD, AND CONVERSION

"The economic loss rule bars a tort action where a defendant has not committed a breach of a duty apart from a breach of contract ... absent personal injury or property damages." *Ben-Yishay v. Mastercraft Development, LLC*, 553 F. Supp. 2d 1360, 1370 (S.D. Fla. 2008) (citations and internal quotations omitted); *see Florida Power & Light Co. v. Westinghouse Electric Corp.*, 510 So.2d 899, 901 (Fla. 1987). The rule rests on the principle that a party who agrees to a contract should not obtain a better bargain simply by advancing a tort claim. *Indemnity Insur.*

---

Footnote continued from previous page
He has continued to use the product to make free phone calls to this day. These and other inaccuracies are discussed in the accompanying motion for a bond under FDUPTA.

[4]   magicJack LP is the only defendant that contracted with, or provided any customer service to, plaintiff. magicJack LP is a limited liability partnership with one limited partner, YMax Corporation, and one general partner, YMax Holdings Corporation. Defendant YMax Corporation is a holding company and does not operate any businesses. Defendant Daniel Borislow invented magicJack® and owns shares in YMax Corporation. He is an officer but has no partnership interest in magicJack LP.

*Co. of North America v. Amer. Aviation, Inc.*, 891 So.2d 532, 536 (Fla. 2004); *Westinghouse*, 510 So.2d at 901. If the parties are in privity and the tort claim is inseparable from the essence of the parties' agreement, the tort claim fails. *Topp, Inc. v. Uniden Am. Corp*, 513 F. Supp. 2d 1345, 1348 (S.D. Fla. 2007). *See also PNC Bank Nat'l Ass'n v. Colonial Bank, N.A.*, 2008 WL 2917639, at *3 (M.D. Fla. July 24, 2008) ("[W]hen the conversion action is 'exactly coextensive with the nonperformance of an agreement between the parties,' such an action may not stand.").

Thus, alleged fraudulent or negligent misrepresentations that either "relate directly to the subject matter of the parties' agreement, or are interwoven with the agreement" cannot form the basis for an independent tort under Florida law. *Premix-Marbletite Manufacturing Corp. v. SKW Chemicals, Inc.*, 145 F. Supp. 2d 1348, 1359 (S.D. Fla. 2001). Indeed, "statements or misrepresentations made to induce an individual to enter a contract, if later contained within the terms of the actual contract, cannot constitute a basis on which to bring the fraud claim." *Ben-Yishay*, 553 F. Supp. 2d at 1370 (quoting *Flamenbaum v. Orient Lines, Inc.*, 2004 WL 1773207, at *7 (S.D. Fla. July 24, 2004)); *Topp*, 513 F. Supp. 2d at 1348 ("No action for the tort of fraud in the inducement will lie where the alleged fraud contradicts a subsequent written contract."). A merger clause may be dispositive: "[W]hen alleged misrepresentations are discussed and incorporated into a written contract containing a merger clause that supercedes all prior representations and agreements, the economic loss rule bars recovery for fraudulent inducement." *Topp*, 513 F. Supp. 2d at 1348.

The *Premix-Marbletite* case is particularly instructive. There, a buyer purchased a chemical product allegedly in reliance on the seller's representation that it could be used as an exterior coating for swimming pools. The buyer and seller thereafter entered a contract. When the chemical caused discoloration in the pool, the buyer sued for breach of warranty, fraud in the

6

inducement, and negligent misrepresentation. *Id.* at 1358. In dismissing the claims, the court held that the economic loss rule was not "purely a matter of timing; *i.e.*, if the allegedly fraudulent or negligent statement is made before the contract is formed, the tort claim is not barred by the economic loss rule." *Id.* at 1358 n.12. The court instead looked to the contractual relationship between the parties, the conduct complained of, and the damage it allegedly caused. *Id.* The court found that the seller's representations went "directly to the heart of the parties' contractual relationship for the sale of [the chemical]. In fact, the allegations contained in [plaintiff's] tort claims are essentially the same as those in its breach of warranty claim." *Id.* at 359.

In this case, as in *Premix-Marbletite*, the parties agreement memorializes the alleged fraudulent and negligent representations on which plaintiff purportedly relied.[5] In particular, the terms of service agreement includes a 30-day "Money-Back Guarantee," and also displays the 30-day "Free Trial" representation. Moreover, the contract has an unambiguous merger clause under which the terms of service agreement "trumps any prior agreements" between the parties. This provision establishes that the contract controls this dispute.

Plaintiff may ask this court to ignore the terms of service agreement and merger clause, and instead determine that there is only a stand-alone contract committing defendants to make no charges to a customer's credit or debit card until 30 days after the date of purchase. Compl. ¶ 50.

---

[5] "Clickwrap" agreements entered into electronically -- such as the terms of service agreement here -- are valid and enforceable under Florida law. *See Leatherwood v. Cardservice International, Inc.*, 929 So.2d 616, 617 (Fla. Dist Ct. App. 2006) ("click agreements" are "valid and enforceable"); *Salco Distributors, LLC v. iCode, Inc.*, No. 8:05 CV 642 T 27TWG, 2006 WL 449156, at *2 (M.D. Fla. Feb. 22, 2006) ("In Florida and the federal circuits, shrinkwrap and clickwrap agreements are valid and enforceable contracts."). *See also Lopez v. Ernie Haire Ford, Inc.*, 974 So. 2d 517, 519 (Fla. Dist Ct. App. 2008) ("A party has a duty to learn and know the contents of a proposed contract before he signs and delivers it and is presumed to know and understand its contents, terms and conditions.").

Even if such surgical removal of the terms of service were permissible -- and it is not -- plaintiff's allegations still establish contractual privity with magicJack LP concerning representations central to the case. That precludes plaintiff's claim for fraud and misrepresentation.

In sum, however plaintiff dresses up his allegations, they are still contract claims based on magicJack LP's performance of its agreement for the sale of the magicJack® to plaintiff. The core issues plaintiff presents -- whether Plaintiff improperly had to "pay up front" for the free trial and whether magicJack LP refused to give him a refund within 30 days from his order -- require an assessment of whether magicJack LP fulfilled its obligations under the parties' agreement. Indeed, plaintiff's tort claims and his breach of contract claim challenge the same conduct, *compare* Compl. ¶ 52, *with id.* ¶ 60-61, and assert the same purported "actual injury": "a loss of money or property and the use of money or property, and expended time in attempting to secure a refund...." *Id.* ¶ 11. It is clear that the tort claims are inseparable from the parties' agreement, and those claims therefore should be dismissed.

## II. PLAINTIFF HAS NOT STATED A CLAIM FOR VIOLATION OF THE FEDERAL COMMUNICATION ACT

Based on an assertion that, "[a]s a VoIP service provider, defendants are subject to the provisions of the Federal Communications Act," Compl. ¶ 67, the complaint alleges a violation of the Federal Communication Act's (FCA's) civil enforcement provision, 47 U.S.C. § 201(b). That provision does not create a right of action for the conduct at issue here.

Sections 201 to 207 of the FCA allow for recovery against "common carriers." *See* 47 U.S.C. § 207 ("[a]ny person claiming to be damaged by any common carrier ... may bring suit"); *Pinney v. Nokia, Inc.*, 402 F.3d 430, 450 (4th Cir. 2005) ("Sections 201 and 207 allow recovery only against common carriers."). The FCA defines "common carriers" as "entities that must

provide [transmission] service[s] to the public without discrimination and are heavily regulated by the FCC." *Id.* (internal quotation and citation omitted). At least one court has found that Voice over Internet Service Providers are not "common carriers." *See, e.g.*, *Vonage Holdings Corp. v. Minnesota Pub. Utilities Comm'n*, 290 F. Supp. 2d 993, 1001 (D. Minn. 2003) (finding VoIP provider was an information, rather than telecommunications, service due to methods used for call transmission). *Cf. Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 974-75 (2005) (noting that the FCA currently "regulates telecommunications carriers, but not information-service providers, as common carriers").

Even assuming defendants were "common carriers," plaintiff's claim still would fall outside section 201(b). The FCA authorizes challenges to a common carrier's provision of services, or to the calculation of tariff rates. But it provides no cause of action for deceptive advertising or billing practices, which plaintiff asserts here. *Pinney*, 402 F.3d at 450 (section 201 does not "include deceptive advertising and billing by wireless service providers in the provision of wireless telephone service"); *Marcus v. AT&T Corp.*, 138 F.3d 46, 54 (2d Cir. 1998) ("[W]hile the FCA does provide some causes of action for consumers, it provides none for deceptive advertisement and billing."); *Weinberg v. Sprint Corp.*, 165 F.R.D. 431, 438 (D.N.J. 1996) ("[T]he Communications Act impose[s] no duty on common carriers to make accurate and authentic representations in their promotional practices...."). Accordingly, plaintiff's claim under the FCA should be dismissed.

### III. THE EXISTENCE OF A VALID, EXPRESS CONTRACT BARS PLAINTIFF'S UNJUST ENRICHMENT CLAIM

As noted above, Florida law enforces express contracts, and does not permit litigants to enlist courts in rewriting them. In particular, claims based on the legal fiction of an implied contract -- such as unjust enrichment -- cannot survive "when the rights of the parties are

described in a written contract." *Corn v. Greco*, 694 So. 2d 833, 834 (Fla. Dist Ct. App. 1997). *See also Berry v. Budget Rent A Car Systems, Inc.*, 497 F. Supp. 2d 1361, 1369-70 (S.D. Fla. 2007) (dismissing claims for "unjust enrichment" and "money had and received" given existence of express contract); *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1326 (S.D. Fla. 2000) (refusing to hear quasi-contract claims of unjust enrichment where an express contract exists); *Mobil Oil Corp. v. Dade County Esoil Mgmt. Co.*, 982 F. Supp. 873, 880 (S.D. Fla. 1997) (stating that equitable remedy of unjust enrichment fails in the face of an express contract); *Brickell Bayview Real Estate, Inc. v. Cooper*, 691 So. 2d 1094, 1095 (Fla. Dist. Ct. App. 1997) ("[a]ny proof of an express agreement between the parties, as to the commissions to be paid ... would necessarily defeat rather than sustain an action for quantum meruit"). Here, plaintiff seeks to have the court imply an agreement where an express contract already exists. Plaintiff's unjust enrichment claim should be dismissed.

## IV. PLAINTIFF HAS FAILED TO PLEAD FRAUD WITH SPECIFICITY

The law requires plaintiff to plead with particularity his claims for violations of the FDUTPA, negligent misrepresentation, and fraud. Fed. R. Civ. P. 9(b) ("in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity"). *See Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1294 (S.D. Fla. 2007) (applying Rule 9(b) to FDUTPA and negligent misrepresentation claims); *Harrison Enterprises, Inc. v. Moran*, 1999 WL 1211753, at *3 (S.D. Fla. 1999) (under Florida law, "an action for negligent misrepresentation sounds in fraud" and Rule 9(b) applies). "This Rule serves an important purpose in fraud actions by ... protecting defendants against spurious charges of immoral and fraudulent behavior." *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997) (internal quotations and citations omitted).

The requirement of particularity in Rule 9(b) is not satisfied unless the complaint alleges: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statements; (3) the content and manner in which the statements misled the plaintiffs; and (4) what defendant gained by the alleged fraud. *See Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007); *Brooks*, 116 F.3d at 1371. Specifically, a "complaint should inform each defendant of the nature of his alleged participation in the fraud" and a complaint that is "devoid of specific allegations with respect to each defendant" is insufficient. *Brooks*, 116 F.3d at 1381. The court's reference to "each defendant" is key. A complaint that "lump[s] together all of the defendants in their allegations of fraud" should be dismissed. *Id. See also Advisor's Capital Investments, Inc. v. Cumberland Casualty & Surety Co.*, 2007 WL 220189, *5 (M.D. Fla. Jan. 26, 2007) (dismissing claim where plaintiffs impermissibly "lumped together" all defendants in allegations); *Sears v. Likens,* 912 F.2d 889, 893 (7th Cir. 1990) ("A complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient").

With the exception of perfunctory and generic one-sentence identification of the defendants, Compl. ¶¶ 9, 12-14, the complaint makes no attempt to allege facts specific to each. The complaint instead indiscriminately attributes all the alleged misconduct to all "the defendants," and charges "all defendants" with violating every count of the complaint. Each defendant, however, is entitled to know with precision the claims alleged against it. The complaint fails to meet that threshold.

### V.  PLAINTIFF HAS FAILED TO STATE A BREACH OF CONTRACT CLAIM AGAINST DEFENDANTS YMAX CORPORATION AND BORISLOW

A plaintiff cannot sustain a breach of contract claim against a defendant that is not a party to the contract and did not otherwise accept its terms. *See Whetstone Candy Co. v. Kraft Foods,*

*Inc.*, 351 F.3d 1076, 1073 (11th Cir. 2003) ("Generally, a contract does not bind one who is not a party to the contract, or who has not in some manner agreed to accept its terms."); *CH2M Hill Southeast, Inc. v. Pinellas County*, 598 So.2d 85, 89 (Fla. Dist. Ct. App. 1992). The terms of service agreement establishes that only magicJack LP -- not YMax Corporation and not Borislow -- entered into a contract with plaintiff regarding the magicJack®. *See* "Terms of Service and Software License Agreement," *available at* http://www.magicJack.com/tos/ (Ex. C). Plaintiff's breach of contract claim against Ymax Corporation and Borislow should be dismissed.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that their motion be granted in its entirety.

Dated:  January 15, 2009
         Miami, Florida

Respectfully submitted,

s/ Benjamine Reid
BENJAMINE REID
Florida Bar No.: 193522
E-Mail: breid@carltonfields.com
CARLTON FIELDS, P.A.
100 S.E. 2nd Street, Suite 4000
Miami, Florida 33131-9101
Telephone: (305) 530-0050
Facsimile:  (305) 530-0055

Robert N. Weiner
E-Mail: robert.weiner@aporter.com
Matthew Eisenstein
E-Mail: matthew.eisenstein@aporter.com
ARNOLD & PORTER LLP
555 12th Street, NW
Washington, D.C.  20004
Telephone: (202) 942-5000
Facsimile:  (202) 942-5999

*Counsel for Defendants Magicjack LP, Ymax Corp. and Daniel Borislow*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 15 day of January, 2009, I served the foregoing to the following counsel listed on the Service List.

                                                  *s/Benjamine Reid*
                                                  BENJAMINE REID

<u>SERVICE LIST</u>
Abramowski v. YMAX CORPORATION
Case No.: 9:08-CIV-81133-RYSKAMP/VITUNAC
United States District Court, Southern District of Florida
West Palm Beach Division

| | |
|---|---|
| WILLIAM C. WRIGHT<br>E-Mail: willwright@wrightlawoffice.com<br>THE LAW OFFICES OF WILLIAM C. WRIGHT, P.A.<br>319 Clematis Street, Suite #109<br>West Palm Beach, Florida 33401-4615<br>Telephone: (561) 514-0904<br>Facsimile: (561) 514-0905<br><br>*Attorneys for Plaintiffs, HARRY ABRAMOWSKI, individually and On behalf of all others similarly situated*<br><br>Via CM/ECF | **OF COUNSEL:**<br>JOE R. WHATLEY, JR.<br>E-Mail: jwhatley@wdklaw.com<br>EDITH M. KALLAS<br>E-Mail: ekallas@wdklaw.com<br>WHATLEY DRAKE & KALLAS, LLC<br>1560 Broadway, 37th Floor<br>New York, New York 10036<br>Telephone: (212) 447-7070<br>Facsimile: (212) 447-7077<br><br>*Attorneys for Plaintiffs, HARRY ABRAMOWSKI, individually and On behalf of all others similarly situated*<br><br>Via CM/ECF |
| **OF COUNSEL:**<br>ANDREW H. MCELROY, III<br>E-Mail: tmcelroy@wdklaw.com<br>W. TUCKER BROWN<br>E-Mail: trbown@wdklaw.com<br>WHATLEY DRAKE & KALLAS, LLC<br>2001 Park Place North, Suite #100<br>Birmingham, Alabama 35203<br>Telephone: (205) 328-9576<br>Facsimile: (205) 328-9669<br><br>*Attorneys for Plaintiffs, HARRY ABRAMOWSKI, individually and On behalf of all others similarly situated*<br><br>Via CM/ECF | **OF COUNSEL:**<br>WILLIAM JAMES DOYLE, II<br>E-Mail : bill@doylelowther.com<br>JOHN ALLEN LOWTHER, IV<br>E-Mail: john@doylelowther.com<br>DOYLE LOWTHER, LLP<br>9466 Black Mountain Road, Suite #210<br>San Diego, California 92126<br>Telephone: (619) 573-1700<br>Facsimile: (619) 573-1701<br><br>*Attorneys for Plaintiffs, HARRY ABRAMOWSKI, individually and On behalf of all others similarly situated*<br><br>Via CM/ECF |

2